LORETO CONTI *vs.* WASHBURN WIRE COMPANY.

APRIL 21, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This original petition for compensation was brought under the provisions of the workmen's compensation act, general laws 1938, chapter 300. After a hearing in the superior court a decree was entered denying and dismissing the petition, and thereafter an appeal to this court was duly prosecuted by the petitioner.

The evidence showed that at the time of the trial the petitioner was fifty-seven years of age; that he began working for the respondent in 1935 as a steel chipper; and that about six months later he was given the job of grinder, which was fairly heavy work. He continued to be so

employed and in April 1943 he first noticed a tremor or shake in his right hand. He consulted Dr. Charles A. McDonald, a neurologist, who diagnosed the trouble as Parkinson's disease, also known as paralysis agitans, and in September of that year the doctor suggested that petitioner be transferred from night to day work, which was done. In May 1944 Dr. McDonald requested that petitioner be given lighter work. However, on June 10 he was operated on by Dr. Henry B. Moor for a hernia, apparently caused by lifting steel. The operation was successful, the petitioner was discharged from the hospital June 23, and after convalescing he returned to work with the respondent.

At that time he was made an inspector, his duties being to examine steel and mark imperfections therein with chalk. He did that work until January 4, 1947, but in the meantime the tremor in his right hand and arm increased and his right leg and foot became similarly affected. On the date last mentioned, which was Saturday, the petitioner while performing his duties as inspector was struck on the back of his right foot by a falling bundle of steel. He was taken to the hospital in Pawtucket where he remained for several hours while his foot was examined and X rays thereof were taken. These revealed no fracture or dislocation and the petitioner was sent home. He returned to the respondent's plant on the following Monday but was told to stay in the washroom and not to act as an inspector. He followed that routine for about twenty days and when he tried to do inspecting thereafter found that he had to sit down a great deal and could not satisfactorily perform his duties. Subsequently he told one doctor that he worked up to February 20, 1947, when all the grinders were laid off, and another that he was discharged October 7, 1947. In any event he did no work after leaving the respondent's employment.

It is not disputed that petitioner was afflicted with Parkinson's disease which became evident in 1943 when he first consulted Dr. Charles A. McDonald. One of its symp-

toms is a shaking or pronounced tremor of the extremities. The petitioner continued to be treated at regular intervals by that doctor for five years or until April 1948 which was shortly before the trial in the superior court. Certain pills were prescribed which were given to retard the progress of the disease the cause of which is not known. No cure has been discovered and the disease is progressive.

In the decree which was entered in the superior court the trial justice made findings of fact to the effect that the petitioner was struck in the back of his right foot by a bundle of steel in January 1947; that his inability to work was due to tremors of the right hand and foot as a result of Parkinson's disease; that at least since 1943 he has suffered from this disease which is progressive and "(4) That the incident of January, 1947, did not aggravate the petitioner's condition nor accelerate the progress of the disease and it is not a causative factor in his inability to work." The correctness of the finding last set out is determinative of the present case. It is the petitioner's contention that there is no legal evidence to support that finding and therefore it becomes an error of law which this court will review and set aside on appeal. The respondent, on the other hand, argues that there is legal evidence to support such finding and, in the absence of fraud, under our well-settled rule of law and by statute the finding then becomes conclusive. G. L. 1938, chap. 300, art. III, §6. *Jillson* v. *Ross,* 38 R. I. 145; *Walsh-Kaiser Co.* v. *Yeager,* 72 R. I. 298.

The petitioner maintains that the incident of January 4, 1947 to his right foot so aggravated his then condition, due to the presence of Parkinson's disease, and accelerated its progress, that there was a causal relationship between such incident and his inability to work thereafter. The evidence relating to the finding of fact upon that issue is of necessity largely medical in character. Doctor Charles A. McDonald who treated the petitioner for Parkinson's disease for five years did not testify. The petitioner in

support of his contention offered Dr. Himon Miller, a neurologist, as a witness. He examined petitioner only once, that is, on April 17, 1948, about five years after he was first stricken with that disease. The respondent concedes that Dr. Miller stated in substance that in his opinion the incident of January 4, 1947 aggravated the disease as it existed in the petitioner. On that point the witness on one occasion in answer to a question made the following statement: "In view of the fact that there is no prior history to suggest any aggravation of the symptoms prior to the time of his injury, I would say that from a medical point of view it is feasible to assume that this has aggravated the situation."

As bearing upon the above testimony the respondent points out that the witness also testified that he relied on the history given him by the petitioner as evidence that his tremors increased right after the incident of January 4, 1947, and that his right foot had been shaking since that time; that the symptoms of Parkinson's disease progress continually; and that the witness thought when he examined petitioner on April 17, 1948 that it was extremely unlikely that he would be able to resume work as an inspector on account of his tremor and weakness. Further the respondent calls attention to the fact that there was definite testimony from another doctor that as far back as 1944 there was a marked tremor or palsy of petitioner's right hand and arm and a slight tremor of his right leg.

The respondent in general contends that the occurrence of January 4, 1947 was of a minor nature and did not require the petitioner to be hospitalized; that it did not cause him any serious or lasting injury and did not aggravate or accelerate the existing Parkinson's disease, which is progressive and increases in severity as time goes on, and which had afflicted the petitioner at that time for about four years; and that his inability to work after February 1947 was reasonably attributable to the natural progress of that disease. Doctor G. Edward Crane testified

on behalf of the respondent that he examined petitioner April 17, 1947 because of the latter's complaint of pain in the lower part of his back. At that time in giving his history petitioner made no reference to any accident on January 4, 1947 but stated that he worked until February 20, 1947 when all grinders were laid off. This witness also testified that he found tremors due to Parkinson's disease in *both* upper and lower extremities and that the petitioner said that his right arm and leg were shaking in 1943 and that he was getting worse.

Doctor Henry B. Moor, a witness for the respondent, who operated on petitioner in June 1944, as hereinbefore mentioned, and who examined him again November 16, 1944, stated that from his notes of such examination there was at that time complete and satisfactory recovery from the hernia operation but he also said: "There is a marked tremor or perhaps better termed palsy of the right hand and arm. There is a slight tremor of the right leg. This condition of the right leg and arm was noticeable the first time he appeared at my office for a hernia examination." The witness then gave the following opinion as to petitioner's ability to work in the future: "He is not able and never will be able to return as a grinder because of his palsy which is an early Parkinson's Disease. This condition will slowly be progressive and will eventually totally disable him. I do not believe this palsy has any connection with his occupation." The doctor in addition testified that a trauma might aggravate an existing Parkinson's disease at the time but would not hasten its progress. In that connection he stated: "I will say at the time anything, sir, that excites these people, at the time certainly will make them shake." The witness explained his knowledge and familiarity with Parkinson's disease by observing that for six or seven years he had occasion to treat a member of his own family for the disease.

The petitioner had the burden of showing that the incident of January 4, 1947 aggravated and accelerated the

disease from which he was suffering and was a causative factor in his inability to work thereafter. The evidence on this point was conflicting in character and in particular was open to different reasonable inferences. The weight of the evidence and the credibility of the witnesses was for the trial justice alone to pass upon. He evidently concluded from all the evidence that petitioner's inability to work in 1947 was due to the natural progress of the disease with which he was afflicted and that the incident of January 4, 1947 was not a causal factor in that connection. After consideration we are of the opinion that there was legal evidence herein which supported such conclusion and likewise the fourth finding of fact as set out in the decree appealed from. That being the case, in the absence of fraud, and none is alleged, such finding is conclusive upon this court.

The petitioner has placed reliance upon our decision in *Paplauskas* v. *Reynolds Machinery Co.*, 71 R. I. 297. That case is clearly distinguishable from the present one. There the trial justice without good reason rejected undisputed and unimpeached evidence that an employee's existing hernia was lighted up by a certain accident, and this court held that there was no legal evidence to support the finding of fact to the contrary as made by the trial justice. In our judgment that is not the situation in the instant case.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Arcaro, Carty & Belilove, Samuel J. Kolodney,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondent.